# J. B. DAVIS

## v.

## SCHOOL DIRECTORS.

1. SCHOOLS—*employment of teachers for the current or succeeding year—what board of directors have the power.* The statute has appointed the first Saturday in April in each year as the time for the election of a school director in each district, and the school year commences at that time. An annual reorganization of the board of directors is required, and the intention of the statute is that the board organized for a given year shall exercise the powers and control the schools of their district during that year.

2. In this case one of the members of a board of school directors, on the 25th of March, made a verbal agreement with a person to employ him to teach a school in the district for three months from the 17th day of April following, this agreement to be reduced to writing when the board should meet. On the 5th day of April the director who made this verbal agreement, and one other director, reduced the verbal agreement to writing and executed the same, antedating it to the 25th of March. The third director had no knowledge of this arrangement at the time it was entered into. The 5th day of April was subsequent to the day appointed by the statute for the election of a director. But the election was not held on that day, having been deferred to the 15th of the month, when another person was elected in the place of the one who had made the verbal agreement with the teacher. A majority of the new board refused to sanction or recognize the contract, and rightly so. A single director had no power to make such a contract. Moreover, the old board of directors had no authority to employ a teacher under a contract to be performed in the succeeding school year.

APPEAL from the Circuit Court of Perry county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. HAMMACK & DAVIS, and Messrs. MURPHY & BODY, for the appellant.

Mr. E. V. PIERCE, and Messrs. T. T. & D. W. FOUNTAIN, for the appellees, cited *Stevenson* v. *School Directors*, 87 Ill. 255, as showing a want of proper authority in the employment of the appellant as a teacher.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action brought before a justice of the peace, by appellant, to recover on a contract to teach school for appellees for three months at $33.33 per month. On a trial before the justice plaintiff recovered a judgment for $80. Defendant perfected an appeal to the circuit court of Perry county, where a trial was had by the court and a jury, resulting in a verdict and judgment in favor of defendants. Plaintiff appeals to this court and asks a reversal.

It appears, from the evidence, that one Luke, a director of the school district, on the 25th of March, 1876, saw appellant and told him the directors wanted him to teach, when appellant informed him what his price was, and it was agreed they should at a future time meet and enter into a written contract, which they did about the 5th of the following April. When the written contract was entered into and executed, Ballheimer, another director, was present and participated in executing the agreement. But Mangin, the other director, was not present, nor was he notified or consulted, nor did he know of the intention to employ appellant. The agreement was to employ him for three months at $33.33 per month, and the school to commence on the 17th day of April, 1876.

The regular election for a director was not held on the first Saturday in April, the time fixed by law, but it occurred on the 15th day of that month, when Baul was elected in the place of Luke, who went out of office. On the 17th appellant applied to Luke for the keys of the school house to commence the term, but was informed that Baul had been elected in Luke's place, and that Baul and Mangin had the keys. Appellant then saw them, and was informed that they had determined to have no summer school, as it was not wanted by the people, a majority of whom had so voted at the election of Baul as director. Appellant offered to teach, but Baul and Mangin declined to receive his services.

It appears that on the 25th of March, 1876, Luke and appellant verbally agreed upon the terms of employment, and that they should be reduced to writing; that appellant at that time had no certificate of qualification, but obtained one from the county superintendent two days after. It was a second class certificate, which he held unrevoked on the 5th of April when the contract was executed.

Conceding that the teacher at the time of his employment must have the necessary certificate of qualification that extends through the entire term of his employment, still the question arises whether appellant did have such a certificate when this contract was entered into by the parties. We apprehend no one would contend that one director, without consultation with and without authority from one or both of the other directors, could make a legally binding contract for the employment of a teacher; nor is it by any means conceded that he could with such authority, as such powers can not usually be delegated. But in this case it is not claimed that Ballheimer ever gave Luke such authority, and Mangin was wholly uninformed of the intention or actions of the other two, in reference to the employment of appellant. His agreement at that time was not binding on either party, and if it ever acquired any vigor, it was when it was reduced to writing and executed by him and Ballheimer on the 5th of April. Appellant, it is not disputed, then had a valid certificate in full force.

But the employment not having been made to be executed during the current school year, or any part of it, until the next school year, was it competent for two of the old directors to make a contract to employ a teacher to perform all of the services during the succeeding school year and after the board of directors should become reorganized?

In the case of *Stevenson* v. *School Directors*, 87 Ill. 255, it was said they had no such power. The law required that the board should be reorganized after Baul was elected, by the selection of one of their number as president and another as clerk of the board, and until the reorganization occurred the

old board had no power to make this contract. Had the election been held at the regular time, Luke, all will concede, as he was not re-elected, could not have acted, and as he was only holding over until his successor was elected, it was the old board of the school year previous to the first Saturday in April, the time fixed by the statute for the election of Luke's successor, that acted. The statute has required an annual reorganization, and the intention of the statute is that the board organized for the school year shall exercise the powers and control the schools of their district during that year.

It becomes manifest that if, just before the school year ends, two directors were to employ teachers and make all contracts of every kind for the ensuing year, against objections of the other director, and one of those making such contracts should not be re-elected, and his successor was opposed to all of the contracts thus made, the school and the affairs of the district would, during the year, be governed and controlled by but one director. To suffer such contracts to be made would take the control of the affairs of the district from the board organized and empowered to control the schools of the district, and thus by this means thwart the object and evident intent of the statute.

No reason is assigned by Luke, nor does any otherwise appear, why an election was not called by the directors, as required by law, and the duty had to be performed by the township school treasurer; nor why he and Ballheimer failed to notify or consult with Mangin in reference to so important a matter as employing a teacher for a summer school; nor why the contract was antedated. He was on the stand, and if these things were not done for a sinister purpose, he could have explained the reason for their occurrence. The failure to call the election, as required by the statute, and the failure to notify Mangin, would seem to imply that Luke and Ballheimer had some unauthorized purpose in thus acting. It is probable that it was done to enable them to employ appellant, and it may be against the wishes of Mangin and a majority

of the parents of the district.   Or it may have been to force upon the people, against their wishes, a summer school.   These or other improper purposes, leading to great abuse, could be accomplished by the board taking control of the schools and the business of the district for the ensuing school year.   It is probable that Luke may have doubted his power to act after the year for which he was elected had expired, and hence he dated the agreement back to the 25th of March, so as to appear as though it had been executed before the school year had expired.

We are therefore of opinion that this contract was not binding, as it was entered into without authority by the directors who attempted thereby to bind the district.   In this view of the case it becomes entirely unimportant to discuss and determine the other questions raised on the record.   The contract being invalid it does not matter whether the court erred in admitting or rejecting evidence, or in giving or modifying instructions.

We must hold that the judgment of the court below must be affirmed.

*Judgment affirmed.*